IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:10-CT-3164-D

FARLEY L. BERNARD,                    )
                                      )
              Plaintiff,              )
                                      )
       v.                             )          **ORDER**
                                      )
GERALD BRANKER, et al.,               )
                                      )
              Defendants.             )

On September 13, 2010, Farley L. Bernard ("Bernard" or "plaintiff"), a state inmate

proceeding pro se, filed a complaint under 42 U.S.C. § 1983 [D.E. 1]. On December 19, 2011,

Bernard filed a motion to compel discovery [D.E. 38]. On January 12, 2012, the court denied

various motions that Bernard filed and directed defendants to file a response to Bernard's motion to

compel discovery [D.E. 39]. On January 27, 2012, defendants timely responded in opposition to

Bernard's motion to compel discovery [D.E. 41].

On January 30, 2012, defendants moved for summary judgment [D.E. 44]. Pursuant to

Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Bernard

about the motion for summary judgment, the consequences of failing to respond, and the response

deadline [D.E. 45]. On February 13, 2012, Bernard replied to defendants' opposition to the motion

to compel discovery [D.E. 46]. On February 23, 2012, Bernard responded in opposition to the

motion for summary judgment, and attached a memorandum and other supporting documents to his

response [D.E. 47]. On May 9, 2012, the court granted in part Bernard's motion to compel discovery

and directed defendants to file additional medical records and complete copies of certain grievances

[D.E. 49]. On May 31, 2012, defendants filed some of the requested materials [D.E. 50–51]. On

June 7, 2012, Bernard filed a response to the additional materials [D.E. 53] and a motion for leave

to depose several individuals [D.E. 52]. On June 19, 2012, the court directed defendants to supplement their discovery materials with a January 15, 2010 grievance, including all responses [D.E. 54]. On June 21, 2012, defendants filed the requested grievance [D.E. 55]. As explained below, the court denies Bernard's motion for leave to depose, and grants defendants' motion for summary judgment.

I.

Bernard's remaining claim concerns medical care he received at Bertie Correctional Institution ("Bertie") in January 2010. See 3d Am. Compl. [D.E. 7]. Before his incarceration, Bernard donated a kidney to his sister and, as a result, required regular medical care, including diet and blood tests. See, e.g., Hobbs Aff. [D.E. 43-2] ¶ 4; Stover Aff. [D.E. 43-3] 9–11 (utilization review requests), 54–58 (sick call requests), 69 (nursing notes).[1] On October 16, 2009, during an appointment with a nurse to discuss his diet and medications, the nurse scheduled Bernard to see a physician's assistant (Woglom) to discuss his chronic care. Stover Aff. 57 (sick call request and nursing note). At Bernard's request, nurses also examined Bernard on November 23, December 14, and December 23, 2009, to discuss his diet and lab results. Id. 54–56 (sick call requests and nursing notes). Bernard did not file any further sick call requests between December 23, 2009, and March 25, 2010. See Defs.' Resp. [D.E. 50-1], Ex. C.

On January 13, 2010, Bernard "declared a medical emergency" and claimed to suffer from internal bleeding. 3d Am. Compl. 15; Bernard Aff. [D.E. 47-2] ¶ 19; Hobbs Aff. ¶ 4. Defendant nurse Hobbs examined Bernard on January 13, 2010, and, according to Bernard, "refused to treat [his] internal bleeding as a medical emergency and failed to schedule [him] to see the physician."

---

[1] Dr. Phillip Stover is a licensed physician and the Medical Consultant for the Division of Prisons. Stover Aff. ¶ 3.

Case 5:10-ct-03164-D   Document 57   Filed 07/18/12   Page 2 of 6

3d Am. Compl. 15; see also Hobbs Aff. ¶ 5 (describing the examination and the treatment provided for Bernard's alleged internal bleeding); Stover Aff. 67 (medical record). During the course of her examination, Hobbs noted that "Bernard's vital signs were stable and his urine dipstick was normal." Hobbs Aff. ¶ 5. Hobbs provided Bernard three Hemoccult fecal occult cards and instructed him on how to use the cards and return them for testing. Id. Additionally, Hobbs knew that Bernard was scheduled to see Woglom on January 25, 2010. Stover Aff. 67 (medical record).

On January 15, 2010, Bernard filed an emergency grievance noting that he was "still bleeding internally and ha[d] not received any medical treatment or been seen by the physician or doctor." [D.E. 7-1] 1 ("Supporting Documents"), 13 (1/15/10 grievance); see also Bernard Aff. ¶ 20. Bernard alleges that on January 18, 2010, he declared another medical emergency with a prison captain who "contacted the medical department and told [Bernard] that they were refusing to treat [him] and would not let [him] see the physician." 3d Am. Compl. 15; see also Bernard Aff. ¶ 22. On January 22, 2010, Bernard "declared another medical emergency . . . after [he] became dizzy and briefly passed out in [his] cell." 3d Am. Compl. 15. Nonetheless, according to Bernard, defendant Dawson "refused to treat [his] internal bleeding as a medical emergency and failed to schedule [him] to see the physician." Id.; see Dawson Aff. [D.E. 43-1] ¶¶ 4–6 (describing the examination); Stover Aff. 67–68 (medical record). Dawson found that Bernard's vital signs were stable, and was aware that Bernard was scheduled to see Woglom in three days. Stover Aff. 67.

On January 25, 2010, Woglom examined Bernard, and ultimately diagnosed Bernard as having a ruptured cancerous polyp. 3d Am. Compl. 15. On January 27, 2010, Bernard filed a grievance complaining of being assessed a medical emergency fee. Defs.' Resp. [D.E. 50-1], Ex. B.

3

Physicians surgically removed a portion of Bernard's colon. 3d Am. Compl. 15; see Bernard Aff. ¶¶ 25–26; see also Stover Aff. ¶ 9, & 78 (medical record). Bernard alleges that physicians informed him that earlier treatment would have allowed them to remove the polyp without significant surgery. 3d Am. Compl. 15–16. Bernard alleges that the surgery caused him "permanent physical problems . . . ." Id. 16. Dr. Stover asserts that "[t]he cancer found was of a very large size and was likely present for several years. A two-week delay in being seen by the physician assistant would have no significant impact on the eventual treatment or outcome of Inmate Bernard's cancer." Stover Aff. ¶ 9.

## II.

In considering the motion for summary judgment, the court views the evidence in the light most favorable to Bernard and applies well-established principles under Rule 56 of the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 56; Scott v. Harris, 550 U.S. 372, 378 (2007); Celotex Corp. v. Catrett, 477 U.S. 317, 325–26 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247–55 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 585–87 (1986). Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see Anderson, 477 U.S. at 247–48. The party seeking summary judgment must come forward and demonstrate an absence of a genuine issue of material fact. Celotex Corp., 477 U.S. at 325. If the moving party meets its burden, the nonmoving party then must affirmatively demonstrate that there exists a genuine issue of material fact for trial. See Matsushita, 475 U.S. at 587. "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson, 477 U.S. at 249.

4

In order to establish an Eighth Amendment claim for denial of medical care, a prisoner must establish "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." Estelle v. Gamble, 429 U.S. 97, 106 (1976). A serious medical need is "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." Iko v. Shreve, 535 F.3d 225, 241 (4th Cir. 2008) (quotation omitted).

Deliberate indifference requires that a defendant know of and purposefully ignore "an excessive risk to inmate health or safety." Farmer v. Brennan, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. It is "obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause." Whitley v. Albers, 475 U.S. 312, 319 (1986), abrogated on other grounds by Wilkins v. Gaddy, 130 S. Ct. 1175 (2010). Deliberate indifference "sets a particularly high bar to recovery." Iko, 535 F.3d at 241. "In order to establish a claim of deliberate indifference to a medical need, the need must be both apparent and serious, and the denial must be both deliberate and without legitimate penological objective." Grayson v. Peed, 195 F.3d 692, 695 (4th Cir. 1999).

The medical care Bernard received in January 2010 did not rise to the level of deliberate indifference. Bernard received regular medical attention before January 13, 2010, and never described any symptoms which should have led to more aggressive medical treatment. When Bernard declared a medical emergency on January 13, 2010, and defendant Hobbs examined him, his vital signs were stable and he was scheduled to see Woglom in eight days. Moreover, defendant Hobbs provided him with Hemoccult cards in an attempt to diagnose his complaints of bleeding. When Bernard declared a medical emergency on January 22, 2010, defendant Dawson examined him

5

and determined his vital signs were stable. Significantly, Bernard did not submit any sick-call requests in January 2010. Moreover, Bernard's reliance on his January 15, 2010 grievance is misplaced. Notably, the grievance demonstrates only that Bernard was dissatisfied with the fact that as of the date he filed it (two days after his first declared emergency) he had not yet been seen by a physician.

In opposition to summary judgment, Bernard now states that he complained to various nurses of "bleeding ulcers inside his stomach" for four months before January 2010, and that during his January 25, 2010 appointment with Woglom, Woglom "told [Bernard] that . . . Hobbs had been deliberately denying [Bernard] access to him for treatment." Bernard Aff. ¶¶ 4–9, 26. Medical records belie Bernard's eleventh-hour assertions, assertions which are notably absent from the original allegations of his complaint. Bernard's own sick-call requests submitted between September and December 2009 lack any description of bleeding. Bernard's January 15, 2010 grievance states that he "had been bleeding internally for over a week[,]" not for four months. Moreover, Bernard's January 27, 2010 grievance complains of having to pay a medical emergency fee, and mentions nothing about interference by defendant Hobbs with Bernard's medical treatment. Thus, Bernard has failed to present a genuine issue of material fact sufficient to defeat summary judgment. See, e.g., Johnson v. Ozmint, 567 F. Supp. 2d 806, 816 (D.S.C. 2008).

### III.

In sum, the court GRANTS defendants' motion for summary judgment [D.E. 44] and DENIES plaintiff's motion for leave to depose [D.E. 52]. The Clerk of Court shall close the case.

SO ORDERED. This _18_ day of July 2012.

JAMES C. DEVER III
Chief United States District Judge